UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

HASMAT ARA

       Plaintiff,

       -against-

SAKINA KHAN and KAMRAN KHAN

       Defendants.

-------------------------------------------------------------X

**CV 07    1251**

07 Civ. _____

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

MAR 29 2007

BROOKLYN OFFICE

COMPLAINT

**ROSS, J.**

**J. ORENSTEIN, M.J.**

Plaintiff HASMAT ARA, by her attorneys the Urban Justice Center and Clifford Chance
US LLP, alleges upon knowledge as to herself and upon information and belief as to all other
matters as follows:

## PRELIMINARY STATEMENT

1.     This is an action brought by Plaintiff Hasmat Ara ("Ms. Ara"), a domestic worker, to
remedy the trafficking and exploitative working conditions to which she was subjected for
approximately 16 months while employed by Defendants Sakina Khan ("Mrs. Khan") and
Kamran Khan ("Mr. Khan"). Ms. Ara was initially recruited as a live-in nanny to care for
Defendants' two young children until Defendants came home at night. Instead, immediately
after Ms. Ara began her employment with Defendants, they forced her to perform all of the
household chores of cooking, cleaning, and washing the children's clothes *in addition* to caring
for the children, including providing 24-hour care for the then one-month old infant.

2.     To coerce Ms. Ara to work, Defendants physically isolated her to the confines of their
house, restricting her from any contact with the outside world. They subjected her to constant
ridicule, insults, and threats of physical harm, inciting fear in her so that she came to believe that

1

if she stepped outside of Defendants' home, she would suffer serious harm. Moreover, Defendants physically assaulted her and denied her adequate medical care. It was only after 16 months of abuse that Ms. Ara managed to escape.

3.    Furthermore, Defendants willfully violated federal and state labor laws by paying Ms. Ara far below the federal and state minimum wage and intentionally failing to pay overtime premiums to which she was entitled.

4.    As a result of Defendants' unlawful conduct, Ms. Ara suffered severe emotional distress and humiliation, physical injuries, and substantial economic harm. Ms. Ara now brings this action to seek just and fair compensation pursuant to the Victims of Trafficking and Violence Protection Act of 2000, as amended, 18 U.S.C. §§ 1589, 1590, and 1595, the Thirteenth Amendment to the United States Constitution and its enforcing statute, 18 U.S.C. § 1584, the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., New York Labor Law §§ 190 et seq. and 650 et seq., and New York state contract and tort law.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, 29 U.S.C. § 216(b), and 18 U.S.C. § 1595. This Court has supplemental jurisdiction over Ms. Ara's state law claims pursuant to 28 U.S.C. § 1367(a).

6.    Venue is proper pursuant to 28 U.S.C. § 1391(b), as events giving rise to this action occurred within this district and Defendants reside in this district.

## PARTIES

7.    Plaintiff Hasmat Ara is Bangladeshi and is not a citizen of the United States. Ms. Ara worked as a full-time, live-in domestic worker for Defendants from approximately the end of November 2004 through approximately the beginning of April 2006.

2

8.     Defendant Mrs. Khan is of Bangladeshi descent and resides at 148-60 87th Avenue, 2nd Floor, Jamaica, New York 11435.  At all times relevant to this action, Mrs. Khan was a full-time medical student.

9.     Defendant Mr. Khan is of Bangladeshi descent and resides at 148-60 87th Avenue, 2nd Floor, Jamaica, New York 11435.  At all times relevant to this action, Mr. Khan was employed at an insurance company and managed property that Defendants own in Queens, New York.

10.    Defendants Mrs. Khan and Mr. Khan are married to each other, and together they have two young children.

11.    At all times relevant to this action, Ms. Ara was Defendants' employee as defined by 29 U.S.C. § 203(e)(1) and New York Labor Law §§ 2(5), 190(2) and 651(5).

12.    At all times relevant to this action, Defendants were Ms. Ara's employers as defined by 29 U.S.C. § 203(d) and New York Labor Law §§ 2(6), 190(3) and 651(6).

13.    At all times relevant to this action, Ms. Ara was employed by Defendants within the meaning of 29 U.S.C. § 203(g) and New York Labor Law § 2(7).

## STATEMENT OF FACTS

### Recruitment

14.    Ms. Ara responded to a job posting for a nanny in a local Bengali-language newspaper and was interviewed by Defendants in late November 2004.

15.    At the interview, Defendants represented to Ms. Ara that her duties would consist of caring for Defendants' two young children by feeding, clothing, and cleaning them until Defendants returned home at night.

16.    At the time of hire, Defendants' older child ("Jen"), was eight years old and the younger child ("Ryan"), was a one-month old infant.

3

17.     Defendants agreed to pay Ms. Ara $700 per month for working as a live-in nanny for seven days a week and promised that Ms. Ara would receive an increase in her wages shortly after she began her employment.

18.     Defendants never intended to carry out the representations they made to Ms. Ara.

### General Work Conditions and Responsibilities

19.     In late November 2004, Mrs. Khan brought Ms. Ara to Defendants' home. As soon as Ms. Ara arrived at Defendants' home, they required Ms. Ara to perform substantially more duties than they had represented at the time of recruitment.

20.     Ms. Ara was required to clean the entire house, as well as cook breakfast, lunch, and dinner for Defendants' family.

21.     Defendants required Ms. Ara to sleep in the same room as the children in order to provide constant care to the one-month old infant Ryan.

22.     Defendants reside in a spacious house, consisting of three relatively large bedrooms, two bathrooms, one living room, and a kitchen.

23.     Approximately one day after Ms. Ara began working, when she realized that Defendants had misrepresented the terms of her employment, Ms. Ara told Defendants that she wished to leave her job.

24.     To obtain Ms. Ara's continued labor, Defendants falsely promised that they would hire another person to clean the house, that her job responsibilities would be limited to taking care of the children and cooking, and that Defendants would increase her wages.

4

25.   Shortly thereafter, Defendants had a person come clean the house on one occasion.
After that, however, Defendants required Ms. Ara to clean the house in addition to her other
responsibilities.

26.   Defendants did not increase Ms. Ara's wages until almost one year later.

27.   Generally, Ms. Ara's workday began at approximately 6:00 am by making breakfast
for the entire family, preparing Jen's lunch, and helping Jen get ready for school.  At
approximately 7:00 am, Jen left for school, Mr. Khan left for work, and Mrs. Khan left for
medical school.

28.   After Defendants and Jen left, Ms. Ara took care of the infant by washing and feeding
him.

29.   Ms. Ara worked continuously throughout the day, caring for the infant, cleaning the
house, preparing lunch for Mr. Khan, who came home to eat lunch every day, and preparing
dinner meals for the family.  Ms. Ara prepared food for Mrs. Khan's mother on a daily basis as
well.

30.   The daily preparation of meals for the family was an elaborate, time-consuming
process because Ms. Ara had to cook several Bangladeshi dishes each day.

31.   After Mrs. Khan's father passed away, Defendants observed a Bangladeshi cultural
tradition that involved sharing a meal with as many as 100 people at a local mosque each week
for approximately one month.  Ms. Ara was required to prepare all the food for these gatherings
by herself each week, a task that took up most of the day.

32.   Defendants generally returned home at approximately 8:00 pm each day.  Ms. Ara
served dinner at approximately 10:00 pm or 11:00 pm and spent approximately an hour cleaning
after Defendants completed their dinner.

5

33.    Ms. Ara was not given any privacy as Defendants required her to share a room with both children. Furthermore, Defendants failed to provide Ms. Ara with any bedding, forcing her to use her own pillow, blanket, and bed sheets.

34.    Ms. Ara provided 24-hour care to Ryan because he woke up frequently during the night. Ms. Ara tended to his needs by feeding him, changing his diapers, comforting him when he cried, and holding him until he fell back to sleep.

35.    In providing around-the-clock care to Ryan, Ms. Ara was deprived of reasonably uninterrupted sleep each night.

36.    Approximately seven days after Ms. Ara began her employment, Mrs. Khan left on a trip for approximately three months.   Approximately five days after Mrs. Khan returned home from her trip, she left for another trip for approximately 10 days.

### Enforced Isolation and Threats of Legal Coercion

37.    Defendants coerced Ms. Ara to work for them through a practice and pattern of enforced isolation and threats of legal coercion.

38.    On the first day of employment, Defendants isolated Ms. Ara by prohibiting her from leaving the house and directing her not to speak with anyone.

39.    In addition, Defendants locked the front door of their house when they left in the morning, confining Ms. Ara to the house until they came home at night.

40.    Ms. Ara was never given a key to the house, and she could not unlock the door from the inside.

6

41.    During the approximately 16 months of her employment, Ms. Ara was permitted to go outside of Defendants' home on only three occasions, all of which were limited to Ms. Ara accompanying Defendants either to the grocery store or laundromat.

42.    When Ms. Ara sought permission from Defendants to leave the house to buy her favorite Bangladeshi dessert, Defendants did not permit her to do so and subjected her to insults and ridicule.

43.    Ms. Ara felt as if she were in a prison during the entire period of her employment.

44.    Furthermore, Defendants exploited Ms. Ara's lack of United States citizenship to instill fear in her. Defendants threatened Ms. Ara that if she were to go outside or talk to people, they would report her to the police or immigration officials because she was not a United States citizen.

45.    Whenever Ms. Ara expressed her intent to leave her employment with Defendants or requested an increase in her wages, Defendants insisted that to the extent that she worked in the United States, Ms. Ara had no choice other than to work for Defendants. Such statements caused Ms. Ara to believe that if she terminated her employment with Defendants, they would report her to the police or immigration officials.

46.    Defendants repeatedly and falsely accused Ms. Ara of killing a person in Bangladesh and threatened that they would report her to the police as a murderer. Ms. Ara experienced fear and anguish as a result of Defendants' threats.

47.    In or about December 2005, when Ms. Ara again communicated to Defendants her desire to leave their employ, Defendants confiscated her passport, some jewelry, legal documents for her husband and child, and old bank receipts.

48.     In addition, Defendants threatened to harass Ms. Ara's family in Bangladesh, adding to her distress. Ms. Ara believed that Defendants could cause problems for her family because they were richer than her family.

49.     When Ms. Ara expressly sought the return of her legal documents and personal property, Defendants refused. Defendants told Ms. Ara that they would return her personal property when she returned to Bangladesh.

50.     Defendants intentionally did not permit Ms. Ara to use the telephone of her own accord. Mr. Khan locked both telephones in his bedroom before leaving for work in the morning.

51.     Ms. Ara was allowed to call her family in Bangladesh only under strict surveillance. Defendants always dialed the telephone number for Ms. Ara and monitored her conversation by standing by her as she spoke with her family.

52.     Defendants did not allow Ms. Ara to possess the phone card that was used to call her family.

53.     When Ms. Ara sought Defendants' permission to call a friend, they refused and insulted her by stating that she intended to steal things from Defendants' home to give to her friend.

54.     On at least one occasion, Ms. Ara's friend called her but Defendants would not allow him to speak with her.

55.     Defendants knowingly and willfully imposed a condition of isolation on Ms. Ara with malice and reckless disregard for her rights.

56.     As a result of Defendants' compulsion of Ms. Ara's services through physical restraint and threatened abuse of the legal process, she suffered severe emotional distress and economic harm.

8

### Psychological and Physical Abuse

57.    In addition to denying Ms. Ara any contact with the outside world, Defendants subjected her to continuous verbal ridicule, insults and threats, demonstrating their intent to cause her serious psychological harm.

58.    Defendants constantly called Ms. Ara a "prostitute" in Bengali, a term used to convey disrespect and hatred in the Bangladeshi culture. Defendants also routinely called Ms. Ara a "slave," "servant," "son of a bitch" and "son of a pig" in Bengali, all of which have derogatory connotations.

59.    Defendants threatened Ms. Ara that if she did not work for them, they would have her sent back to Bangladesh.

60.    Defendants willfully and maliciously made such a threat because they knew that Ms. Ara had to earn a living in the United States to support her family in Bangladesh.

61.    Defendants' threat caused Ms. Ara severe emotional distress because she came to believe that if she did not work for Defendants, they would send her back to Bangladesh, which would cause substantial economic harm to her and her family.

62.    Ms. Ara cried often and had difficulty sleeping as a result of Defendants' ridicule, insults, and threats.

63.    Defendants further compelled Ms. Ara to work through physical assaults and threats of physical harm. Defendants threatened Ms. Ara that she would be physically harmed if she disobeyed their directive and went outside of Defendants' house.

64.    On one occasion when Ms. Ara was eating, Mrs. Khan became angry at Ms. Ara without justification. Mrs. Khan berated Ms. Ara that Ryan's diaper had not been changed. Mrs.

9

Khan called Ms. Ara a "prostitute" in Bengali and shoved Ryan's feces-soaked diaper into Ms. Ara's face.

65.     In or about November 2005, Mrs. Khan unreasonably got upset at Ms. Ara because she could not find a charger for a digital camera. Mrs. Khan smacked the back of Ms. Ara's head and neck several times, causing her to faint and lose consciousness for a few hours. Ms. Ara's neck was swollen for approximately one week and still bothers her to this day.

66.     When Ms. Ara regained consciousness, Mr. Khan's sister-in-law, who is a medical doctor, told Defendants to take Ms. Ara to a hospital to obtain medical care. Defendants neither took Ms. Ara to a hospital nor provided her with any medical treatment.

67.     On another occasion in November 2005, Mrs. Khan threw a glass at Ms. Ara, which barely missed her head and shattered on the kitchen sink. Ms. Ara sustained a cut on her hand from the glass shards, causing her severe bleeding.

68.     On one occasion, Ms. Ara fell in the shower while she was washing Ryan's clothes. Ms. Ara sustained injuries to her legs as a result of the fall. Because she was experiencing pain from the fall, Ms. Ara again expressed her desire to leave the employment, but Defendants refused to allow her to leave. They falsely promised to take her to a doctor to treat her injuries, but never did so nor provided her with medical treatment.

69.     While she was employed by Defendants, Ms. Ara regularly asked them to take her to a doctor to seek treatment for her diabetes and high blood pressure and to allow her to refill her prescriptions for medication for these illnesses. Defendants refused to do so even though Ms. Ara offered to pay for her own medical care. When Ms. Ara finally saw a doctor, approximately a day after escaping from Defendants, the doctor remarked that she could have had a stroke because of her untreated diabetes and high blood pressure.

10

## Escape from Defendants

70.    Ms. Ara finally managed to escape from Defendants' home on or about April 1, 2006.
While Defendants were having their afternoon meal, Ms. Ara noticed that the door had been left
open.  She quietly grabbed her purse and left the house undetected.  Ms. Ara walked through the
neighborhood until she was able to find a Bangladeshi store that called her a taxi.  The taxi drove
her to Ms. Ara's friend's home.

## Minimum Wage, Overtime Premiums and Spread of Hours Pay

71.    From approximately late November 2004 through approximately July 2005, Ms. Ara
was paid $700 per month for working continuously throughout the day and night, including
providing 24-hour care to an infant seven days a week.

72.    From approximately August through approximately October 2005, Ms. Ara was paid
$800 per month for working seven days a week.  Ms. Ara's work hours remained the same.

73.    For November 2005, Ms. Ara was paid $1000 per month for working seven days a
week.  Ms. Ara's work hours remained the same.

74.    Ms. Ara was not paid at all for her services from approximately December 2005
through approximately the beginning of April 2006.

75.    Defendants willfully violated federal and state labor laws by not paying Ms. Ara
minimum wage and overtime premiums.

76.    To the extent that Ms. Ara worked in excess of ten (10) hours in a day for Defendants,
Defendants willfully did not compensate her with an extra hour's pay at the minimum wage as
prescribed by state labor laws.

11

## FIRST CLAIM FOR RELIEF
### (Trafficking—Trafficking Victims Protection Act of 2000)

77.    Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 76.

78.    Defendants knowingly recruited Ms. Ara with false promises to obtain her labor and services by a pattern and practice of physically restraining her within Defendants' house, subjecting her to threats and use of physical assaults, continuous verbal abuse, and threatened abuse and/or abuse of legal process in violation of 18 U.S.C. § 1950.

79.    Ms. Ara is authorized to bring this civil claim against Defendants pursuant to 18 U.S.C. § 1595.

80.    As a proximate result of Defendants' actions, Ms. Ara suffered severe pain and suffering, including emotional distress, humiliation, embarrassment, and physical injuries, and substantial lost wages. Accordingly, Ms. Ara is entitled to damages against Defendants in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (Forced Labor—Trafficking Victims of Protection Act of 2000)

81.    Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 80.

82.    Defendants knowingly obtained Ms. Ara's labor and services by a pattern and practice of physically restraining her within Defendants' house, subjecting her to threats and use of physical assaults, continuous verbal abuse, and threatened abuse and/or abuse of legal process in violation of 18 U.S.C. § 1589.

12

83.     Ms. Ara is authorized to bring this civil claim against Defendants pursuant to 18 U.S.C. § 1595.

84.     As a proximate result of Defendants' unlawful conduct, Ms. Ara suffered severe pain and suffering, including emotional distress, humiliation, embarrassment and physical injuries, and substantial lost wages. Accordingly, Ms. Ara is entitled to compensatory damages against Defendants in an amount to be determined at trial and punitive damages in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
(Involuntary Servitude pursuant to the Thirteenth Amendment to the United States Constitution and 18 U.S.C. § 1584)

85.     Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 84.

86.     Defendants knowingly and willfully compelled Ms. Ara to work by physically restraining her, completely isolating her from the outside world, confiscating her passport, threatening to report her to the police and/or immigration authorities, threatening the use and abuse of the legal process, and using and threatening the use of physical violence. Defendants' actions caused Ms. Ara to have, and to believe that she had, no way of avoiding continued service or confinement in violation of the Thirteenth Amendment's prohibition of involuntary servitude.

87.     As a proximate result of Defendants' unlawful conduct, Ms. Ara suffered severe emotional distress, permanent physical injuries, and substantial economic harm. Accordingly, Ms. Ara is entitled to compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
(Federal Minimum Wage—FLSA)

88.    Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in
paragraphs 1 through 87.

89.    Defendants knowingly and willfully paid Ms. Ara less than the federally mandated
minimum wage of $5.15 per hour from approximately the end of November 2004 through
December 31, 2005 in violation of 29 U.S.C. § 206(f) and accompanying United States
Department of Labor regulations.

90.    Defendants knowingly did not pay Ms. Ara the federally mandated wage of $5.15 per
hour from approximately December 2005 through approximately the beginning of April 2006 in
violation of 29 U.S.C. §  206(f) and accompanying United States Department of Labor
regulations.

91.    Defendants' failure to pay Ms. Ara the minimum wage was willful within the
meaning of 29 U.S.C. § 255(a).

92.    Ms. Ara is entitled to an award of damages for unpaid minimum wages in an amount
to be determined at trial and to an equal amount in liquidated damages.


## FIFTH CLAIM FOR RELIEF
(New York State minimum wage—NY Labor Law)

93.    Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in
paragraphs 1 through 92.

94.    Defendants failed to pay Ms. Ara the minimum wage of $5.15 per hour in violation of
New York Labor Law § 652 and New York State Department of Labor Regulations, including

14

but not limited to 12 N.Y.C.R.R § 142-2.1, from approximately the end of November 2004 until December 31, 2004.

95.   Defendants failed to pay Ms. Ara the minimum wage of $6.00 per hour in violation of New York Labor Law § 652 and New York State Department of Labor Regulations, including but not limited to 12 N.Y.C.R.R § 142-2.1, from approximately January 1, 2005 until December 31, 2005.

96.   Defendants failed to pay Ms. Ara the minimum wage of $6.75 per hour in violation of New York Labor Law § 652 and New York State Department of Labor Regulations, including but not limited to 12 N.Y.C.R.R. § 142-2.1, from approximately January 1, 2006 through the beginning of April 2006.

97.   Defendants' failure to pay the minimum wage was willful within the meaning of New York Labor Law § 663.

98.   Ms. Ara is entitled to an award of damages for unpaid minimum wages in an amount to be determined at trial and an amount equal to one quarter of the unpaid minimum wages in liquidated damages.

SIXTH CLAIM FOR RELIEF
(New York State overtime premiums—NY Labor Law)

99.   Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 98.

100.   Defendants failed to pay Ms. Ara overtime premiums at the rate of one and one half times the applicable minimum wage for each hour worked in excess of 44 hours per week in violation of New York Labor Law and New York State Department of Labor Regulations, including but not limited to 12 N.Y.C.R.R. § 142-2.2.

15

101. Defendants' failure to pay the minimum wage was willful within the meaning of New York Labor Law § 663.

102. Ms. Ara is entitled to an award of damages for unpaid overtime premiums for each hour worked over 44 hours per week in an amount to be determined at trial and an amount equal to one quarter of the unpaid overtime premiums in liquidated damages.

### SEVENTH CLAIM FOR RELIEF
(Spread of Hours Pay—New York Labor Law)

103. Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 102.

104. Defendants failed to pay Ms. Ara an extra hour's pay for every day that Ms. Ara worked in excess of ten (10) hours, in violation of New York Labor Law §§ 190 et seq. and 650, et seq. and New York State Department of Labor Regulations, including but not limited to 12 N.Y.C.R.R. § 142-2.4.

105. Defendants' failure to pay an additional hour's pay for every day Ms. Ara worked in excess of 10 hours was willful within the meaning of New York Labor Law § 663.

106. Ms. Ara is entitled to an award of an extra hour's pay for every day that she worked in excess of 10 hours in an amount to be determined at trial and an amount equal to one quarter of the unpaid spread of hours pay in liquidated damages.

### EIGHTH CLAIM FOR RELIEF
(Quantum Meruit)

107. Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 106.

16

108.   Ms. Ara performed labor and services for Defendants in good faith and with the expectation that she would receive full payment.

109.   Defendants received the full benefit of Ms. Ara's labor and services, but failed to compensate Ms. Ara for the fair and reasonable value of that labor and services.

110.   As a result of Defendants' conduct, Ms. Ara sustained damages in the amount of the fair and reasonable value of her labor and services, to be determined at trial.

## NINTH CLAIM FOR RELIEF
(Unjust Enrichment)

111.   Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 110.

112.   Defendants have enriched themselves by withholding money owed to Ms. Ara for all of the time Ms. Ara worked.

113.   The enrichment was at Ms. Ara's expense because Ms. Ara would have received the money owed had Defendants not intentionally and willfully violated federal and state labor laws.

114.   The circumstances were such that equity and good conscience requires Defendants to pay Ms. Ara for all the time she worked but was not paid.

## TENTH CLAIM FOR RELIEF
(False Imprisonment)

115.   Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 114.

116.   Defendants knowingly and intentionally confined Ms. Ara within Defendants' house by locking the front door to their home in the mornings when they left the building, by use of

physical assaults and threats of serious harm, by legal coercion, and by constant verbal abuse so as to deprive Ms. Ara of her freedom of movement.

117.   Ms. Ara was conscious of being confined and did not consent to her confinement to Defendants' house.

118.   Defendants confined Ms. Ara knowingly and willfully and with malice and reckless disregard for her rights.

119.   As a proximate result of Defendants' conduct, Ms. Ara suffered pain and suffering, including physical injuries, emotional distress, embarrassment and humiliation. Accordingly, Ms. Ara is entitled to compensatory damages in an amount determined at trial and punitive damages in an amount to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

120.   Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 119.

121.   Defendants maliciously engaged in a pattern of extreme and outrageous conduct by compelling Ms. Ara's labor through enforced isolation and legal coercion, physically assaulting Ms. Ara, threatening physical harm and subjecting Ms. Ara to continuous verbal insults, ridicule and threats. Defendants acted with the intent of causing, and/or reckless disregard of a substantial probability of causing, severe emotional distress and physical pain and suffering.

122.   As a proximate result of Defendants' actions, Ms. Ara suffered extreme emotional distress, humiliation, embarrassment, and permanent physical injuries. Accordingly, Ms. Ara is entitled to compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF
(Assault and Battery)

123.  Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 123.

124.  Defendant Mrs. Khan intentionally caused offensive and harmful contact with Ms. Ara by slapping, throwing a glass and shoving a feces-filled diaper at Ms. Ara without her consent, so as to constitute battery.

125.  By throwing a glass at Ms. Ara, Defendant Mrs. Khan placed Ms. Ara in imminent apprehension of harmful contact, so as to constitute assault.

126.  In committing unprovoked and unjustified batteries upon Ms. Ara in a willful and malicious manner, Defendant Mrs. Khan placed Ms. Ara in imminent apprehension of harmful contact, so as to constitute assault.

127.  As a proximate result of the assault and batteries, Ms. Ara sustained physical injuries and incurred medical bills and other expenses.  These injuries have caused and will continue to cause Ms. Ara great pain and suffering, both mental and physical. Accordingly Ms. Ara is entitled to compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial.

## THIRTEENTH CLAIM FOR RELIEF
(Conversion)

128.  Ms. Ara repeats and realleges as if fully set forth herein the allegations contained in paragraphs 1 through 127.

129.   Defendants wrongfully took and assumed ownership over Ms. Ara's passport, jewelry, and other personal property without her authorization and to the exclusion of Ms. Ara's ownership rights in the property.

130.   Defendants willfully and deliberately assumed ownership over Ms. Ara's personal property with malice and disregard of her ownership rights in the property.

131.   As a result, Ms. Ara is entitled to return of the property and to compensatory and punitive damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

(a)   Award compensatory and liquidated damages to Plaintiff for unpaid minimum wages, overtime premiums, and spread of hours pay pursuant to the FLSA and New York Labor Law;

(b)   Award compensatory and punitive damages to Plaintiff for forced labor and involuntary servitude;

(c)   Award compensatory damages to Plaintiff for quantum meruit, unjust enrichment, intentional infliction of emotional distress, false imprisonment, assault and battery, and conversion under New York state law;

(d)   The return of Plaintiff's property unlawfully kept;

(e)   Award punitive damages to Plaintiff for intentional infliction of emotional distress, false imprisonment, assault and battery, and conversion under state law;

(f)   Award prejudgment and postjudgment interest;

20

(g)    Plaintiff's reasonable attorneys' fees, together with the costs and disbursements of

this action pursuant to 29 U.S.C. § 216(b), 18 U.S.C. §1595, and New York Labor

Law § 663(1); and

(h)    For such other and further relief as the Court deems just and proper.


Dated: New York, New York
       March 23, 2007

                                    URBAN JUSTICE CENTER and
                                    CLIFFORD CHANCE US LLP


                              By:   _____

                                    Haeyoung Yoon (HY8962)
                                    Molly Biklen (MB 3491)
                                    Urban Justice Center
                                    666 Broadway, 10th Floor
                                    New York, New York 10012
                                    Tel.: 646-459-3003
                                    Fax: 212-533-4598

                                               -and-


                                    Hissan Bajwa (HB1225)
                                    Clifford Chance US LLP
                                    31 West 52nd Street
                                    New York, New York 10019
                                    Tel.: 212-878-8000
                                    Fax: 212-878-8375


                                    Attorneys for Plaintiff


21